## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| National Service Industries, Inc. | ) | Case No. 12-12057 (MFW) |
| | ) | |
| Debtor. | ) | Jointly Administered |
| _____ | ) | |
| Charles Forman, as the Chapter 7 Trustee for National Service Industries, Inc. | ) ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 14-50377 (MFW) |
| | ) | |
| Kelly Capital, LLC, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### MEMORANDUM OPINION[1]

Before the Court are three Motions to Dismiss filed by the Defendants in response to the Trustee's complaint for avoidance of fraudulent transfers and breach of fiduciary duty.  The Defendants' Motions assert that the claims are either insufficiently pled and/or are barred by the statute of limitations.  For the reasons stated below, the Court will grant the Motions to Dismiss with respect to certain claims and deny the Motions with respect to the other claims.

---

[1] The Court is not required to state findings of fact or conclusions of law, pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.  Accordingly, the facts recited are those averred in the Complaint, which must be presumed as true for the purposes of the Motions to Dismiss.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

I.   <u>BACKGROUND</u>

In 2003, NS Acquisition Corp., whose president and chief executive officer was Michael R. Kelly ("Kelly"), merged with National Services Industries, Inc. (the "Debtor").  The only two stockholders of the Debtor were Kelly, who served as chairman and secretary of the board, and David N. Spriggs II ("Spriggs"). Kelly owned Kelly Capital Investments, LLC ("KCI"), Front Street Investment Fund, LLC ("Front"), and Kelly Capital, LLC ("Kelly Capital") - which owned National Service Industries, Inc., a California Corporation ("NSI") and Englewood Holdings Corporation ("Englewood") - (collectively the "Corporate Defendants"). Spriggs formed and controlled the David Nicholas Spriggs II Living Trust Dated August 19, 2005 ("the Spriggs Trust").

The Debtor's predecessor in interest owned North Brothers, Inc., which was subject to claims for asbestos-related bodily injury or wrongful death.  The Debtor was insured under numerous insurance policies for the asbestos losses.  Almost 200,000 asbestos claims have been filed against the Debtor; approximately 30,000 claims remain.

According to the Complaint, in 2006, Kelly - through one of the Corporate Defendants - caused the Debtor to sell the assets of its subsidiaries.  (Cm. at ¶¶ 18 & 19.)[2]  Further, between 2004 and 2011, the Debtor made approximately $120 million in

---

[2]  References to the Complaint are "Cm."

loans and $70 million in transfers to the Defendants.  (Cm. at ¶¶
30-33.)  Between 2007 and 2011, the Debtor forgave the $120
million in loans made to the Defendants.  (Cm. at ¶ 32.)

Specifically, the Debtor lent Front $10.8 million on April
2, 2004, $5 million on July 2, 2004, $8 million on August 27,
2004, $4 million on December 28, 2004, and $5.9 million on August
31, 2005.  (Cm. at ¶¶ 35-39.)  On June 15, 2007, the Debtor's
board declared a "dividend to its stockholders" by transferring
to the shareholders all of the obligations (more than $31 million
with interest) owed by Front to the Debtor.  (Cm. at ¶ 45.)

The Debtor also made transfers to the other Defendants in
2008 as follows: almost $15 million to Kelly Capital, almost
$500,000 to Spriggs, $2.85 million to KCI, and $120,000 to Kelly.
(Cm. at ¶¶ 53-56 & Ex. 1.)  The Debtor made transfers totaling
$150,000 to Spriggs in 2009 and transfers to Kelly Capital of
$1.95 million in 2010.  (Cm. at ¶¶ 66, 68 & Ex. 1.)

In addition, the Debtor established lines of credit in favor
of Kelly for $25 million on January 1, 2006, and $1 million on
January 1, 2007.  (Cm. at ¶¶ 42-43.)  The Debtor established
lines of credit in favor of Spriggs as follows: $1.5 million on
January 1, 2006, $2.5 million on January 1, 2007, $1 million on
January 1, 2008, and $1 million on January 1, 2009.  (Cm. at ¶¶
42-43, 52. 65.)  The Debtor established lines of credit in favor
of Kelly Capital as follows: $40 million on July 26, 2007, $20

million on January 1, 2008, and $1 million on January 1, 2009.
(Cm. at ¶¶ 50, 52, 65.)

On December 31, 2008, the Debtor's board of directors
declared another dividend whereby it distributed to the
stockholders the obligations owed to the Debtor by Spriggs (over
$2 million), by Kelly (over $26.5 million), and by Kelly Capital
(over $11 million).  (Cm. at ¶¶ 58 & 59.)

On December 31, 2010, Spriggs was removed from the board,
and Kelly became the sole director.  (Cm. at ¶ 71.)  That same
day, Kelly approved a resolution forgiving debt owed by Kelly
Capital in excess of $43 million and debt owed by KCI of almost
$3 million.  (Cm. at ¶ 72.)  On October 5, 2011, the Debtor's
board of directors approved a resolution forgiving debt owed by
Spriggs of almost $2.5 million.

The Debtor made transfers (directly or indirectly) totaling
over $71 million to NSI and/or Englewood for no legitimate
business purpose.  (Cm. at ¶¶ 33 & 78.)  Most of the obligations
owed by NSI to the Debtor were forgiven.  (Cm. at ¶¶ 81-86.)  On
May 9, 2012, the Debtor's board approved a resolution to sell the
NSI stock to Kelly Capital in exchange for a release of $500,000
purportedly owed by the Debtor.  (Cm. at ¶¶ 87-88.)

On July 12, 2012, (the "Petition Date"), the Debtor filed a
voluntary petition for relief under chapter 7 of the Bankruptcy
Code.  Charles Forman (the "Trustee") was appointed the chapter 7

trustee for the Debtor's estate.  On June 4, 2014, the Trustee
filed the Complaint against the Defendants seeking to recover
alleged fraudulent transfers and damages for the Defendants'
alleged breach of fiduciary duties.  On October 2, 2014, the
Defendants filed the three Motions to Dismiss the Complaint that
are before the Court.  The Motions to Dismiss have been fully
briefed and are ripe for decision.


II.  <u>JURISDICTION</u>

The Court has core jurisdiction over this adversary
proceeding.  28 U.S.C. § 1334 & 157(b)(2)(F).  The Court may not,
however, enter a final order in a fraudulent conveyance or state
law claim (such as a breach of fiduciary duty claim) in the
absence of consent or unless it implicates a claim filed in the
bankruptcy case by the Defendants.  <u>See, e.g.</u>, <u>Exec. Benefits
Ins. Agency v. Arkison</u>, 134 S. Ct. 2165 (2014) (holding that
bankruptcy court could not enter final order in fraudulent
conveyance action but could make recommendations to district
court for disposition); <u>Wellness Int'l Network, Ltd. v. Sharif</u>,
135 S. Ct. 1932 (May 26, 2015) (holding that bankruptcy court has
power to enter final order if the parties consent).

Even if the matter is non-core or the Court lacks authority
to enter a final order, however, the Court has the power to enter
an order on a motion to dismiss.  <u>See, e.g.</u>, <u>Boyd v. Kind Par,</u>

LLC, Case No. 1:11-CV-1106, 2011 WL 5509873, at *2 (W.D. Mich.
Nov. 10, 2011) ("[U]ncertainty regarding the bankruptcy court's
ability to enter a final judgment . . . does not deprive the
bankruptcy court of the power to entertain all pre-trial
proceedings, including summary judgment motions.") (citations
omitted); In re Trinsum Grp., Inc., 467 B.R. 734, 739 (Bankr.
S.D.N.Y. 2012) ("After Stern v. Marshall, the ability of
bankruptcy judges to enter interlocutory orders in . . .
proceedings . . . has been reaffirmed . . . .") (citations
omitted).  Therefore, the Court has the power to decide the
pending Motions to Dismiss.


III.  DISCUSSION

    A.   Standard of Review

        1.   Rule 12(b)(6)

    To survive a Rule 12(b)(6) motion, a claim must meet certain
pleading standards.  The Supreme Court's decisions in Twombly and
Iqbal have shifted federal pleading standards from notice
pleading to a heightened standard of pleading.  Fowler v. UPMC
Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (citing Bell Atl. v.
Twombly, 550 U.S. 544, 555 (2007) and Ashcroft v. Iqbal, 556 U.S.
662 (2009)).  This heightened pleading requirement applies to all
civil suits in federal courts.  Id.

To survive a motion to dismiss under the new pleading standard, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  A pleading must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.  "[C]ourts have an obligation in matters before them to view the complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable." City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 263 (3d Cir. 1998).  A court must "draw on the allegations of the complaint, but in a realistic, rather than slavish manner."  Id.

Determining whether a complaint is "facially plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.  However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'"  Id. (quoting Fed. R. Civ. P. 8(a)(2)).

Courts must conduct a two-part analysis.  <u>Fowler</u>, 578 F.3d at 210.  "First, the factual and legal elements of a claim should be separated," with the reviewing court accepting "all of the complaint's well-pleaded facts as true, but . . . disregard[ing] any legal conclusions."  <u>Id.</u> at 210-11.  Next the reviewing court must "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim to relief.'"  <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 679).

    2.  <u>Rule 9(b)</u>

    a.  <u>Actual Fraudulent Transfers</u>

The Trustee seeks to avoid the transfers (and forgiveness of debt) under the Bankruptcy Code and Delaware's Uniform Fraudulent Transfer Act ("UFTA"), <u>inter alia</u>, as transfers made with the actual intent to hinder, delay or defraud the Debtor's creditors. 11 U.S.C. §§ 544 & 548; Del. Code Ann. tit. 6, §§ 1304-1309.

Actual fraudulent transfer claims must meet the elevated pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure, made applicable by Rule 7009 of the Federal Rules of Bankruptcy Procedure.  <u>See Official Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp. (In re Verestar, Inc.)</u>, 343 B.R. 444, 468 (Bankr. S.D.N.Y. 2006).  Rule 9(b) provides:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b).  The Third Circuit has explained the

8

purpose for Rule 9(b)'s particularity requirement:

> Rule 9(b) requires plaintiffs to plead with
> particularity the "circumstances" of the alleged fraud
> in order to place the defendants on notice of the
> precise misconduct with which they are charged, and to
> safeguard defendants against spurious charges
> of immoral and fraudulent behavior.  It is certainly
> true that allegations of "date, place or time" fulfill
> these functions, but nothing in the rule requires them.
> Plaintiffs are free to use alternative means of
> injecting precision and some measure of substantiation
> into their allegations of fraud.

Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d

786, 791 (3d Cir. 1984).

"Badges of fraud have historically been used to show

fraudulent intent, which may be pled generally under Rule 9(b)."

Charys Liquidating Trust v. Growth Mgmt., LLC (In re Charys

Holding Co., Inc.), Adv. No. 10-50204, 2010 WL 2774852, at *3

(Bankr. D. Del. July 14, 2010).

> The "badges of fraud" that courts often refer to
> include, but are not limited to: (i) the relationship
> between the debtor and the transferee; (ii)
> consideration for the conveyance; (iii) insolvency or
> indebtedness of the debtors [sic]; (iv) how much of the
> debtor's estate was transferred; (v) reservation of
> benefits, control or dominion by the debtor over the
> property transferred; and (vi) secrecy or concealment
> of the transaction.

Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v.

Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.),

405 B.R. 527, 545 (Bankr. D. Del. 2009).  Accord Autobacs

Strauss, Inc. v. Autobacs Seven Co. (In re Autobacs Strauss,

Inc.), 473 B.R. 525, 565 (Bankr. D. Del. 2012).

9

> The presence or absence of any single badge of fraud is not conclusive. "The proper inquiry is whether the badges of fraud are present, not whether some factors are absent. Although the presence of a single factor, i.e. badge of fraud, may cast suspicion on the transferor's intent, the confluence of several in one transaction generally provides conclusive evidence of an actual intent to defraud." Additionally, a court may consider other factors relevant to the transaction.

Fedders, 405 B.R. at 545 (citations omitted).

In addition, "[t]he requirements of Rule 9(b) are relaxed and interpreted liberally where a trustee or a trust formed for the benefit of creditors . . . is asserting the fraudulent transfer claims." Id. at 544. This is because the trustee often does not have all the facts that the debtor in possession would have about the conduct of the parties pre-petition.

In a case similar to the case at bar, the trustee alleged that the debtor had made certain fraudulent transfers which were avoidable under the fraudulent transfer laws of several states, including Delaware. Charys, 2010 WL 2774852, at *4. The Charys Court found that actual fraudulent intent was sufficiently pled in the complaint by alleging several badges of fraud. Id.

First, the Charys trustee alleged that transfers were made partially for the benefit of an insider. Id. Second, the complaint alleged insufficient consideration because the defendant provided no meaningful services to the debtor. Id. at *4-6. Third, the complaint alleged that the debtor was insolvent. Id. at *4. Finally, the complaint alleged that the

transfers were concealed from the board of directors, senior management, and lenders.  Id.  As a result, the Charys Court found the complaint sufficiently pled fraud.  Id. at *5-6.

Based on the facts and allegations of the Complaint in this case, the Court similarly finds that the Trustee has asserted sufficient facts to support several badges of fraud from which actual fraudulent intent could be inferred for Rule 9(b) purposes.  Id.  See also Seville Indus., 742 F.2d at 791.  First, it is alleged that the transfers were made by the Debtor to insiders Kelly and Spriggs (who were officers and members of the Debtor's board) or their related entities.  (Cm. at ¶¶ 12-14.) See also Charys, 2010 WL 2774852, at *4.  Second, the Trustee alleges that the Debtor was subject to thousands of asbestos-related claims and that consequently the Debtor was insolvent at the time of the transactions.  (Cm. at ¶¶ 96, 109, 122, 138, 154, 170, 186, 199, 212.)  Charys, 2010 WL 2774852, at *4.  Third, for each transaction (the transfers and later forgiveness of debt) it is alleged that the Debtor received no value.  (Cm. at ¶¶ 29-33, 95, 108, 121, 137, 153, 169, 185, 198, 211, 228 & 242.)  Charys, 2010 WL 2774852, at *6.  Although the transactions were not concealed from other board members, this factor is not relevant here because Kelly and Spriggs were the only directors and controlled the Debtor.  (Cm. at ¶¶ 12-14, 71.)

Unlike the plaintiffs in <u>Fedders</u> who simply pled a single badge of fraud (the insolvency of the transferor), the Trustee in this case has alleged three badges of fraud.  <u>Fedders</u>, 405 B.R. at 545.  Further, the Defendants have been put on notice of the specific transfers alleged to be fraudulent as they are identified by date and amount.  (Cm. at Ex. 1.)  <u>See also</u> <u>Seville Indus.</u>, 742 F.2d at 791 (noting that the allegations of "date, time or place" may provide sufficient notice of the claims against the defendants).

Therefore, the Court concludes that the Trustee has adequately stated a claim for avoidance of actual fraudulent transfers under Rule 9(b) in Counts One, Three, Five, Seven, Nine, Eleven, Thirteen, Fifteen, Seventeen, Nineteen, Twenty-One, and Twenty-Six.  Thus, the Court will deny the Motions to Dismiss those Counts on the grounds they were insufficiently pled.

   3.   <u>Rule 8(a)(2)</u>

      a.   <u>Constructively Fraudulent Transfers</u>

The Trustee also seeks to avoid the transfers (and forgiveness of debt) under the Bankruptcy Code and Delaware's UFTA as transfers made while the Debtor was insolvent for less than reasonably equivalent value.  11 U.S.C. §§ 544 & 548; Del. Code Ann. tit. 6, §§ 1304-1309.

In pleading constructive fraud, the Trustee need not meet the requirements of Rule 9(b), but need meet only the lower

standards of Rule 8(a)(2).  See Global Link Liquidating Trust v.
Avantel, S.A. (In re Global Link Telecom Corp.), 327 B.R. 711,
717 (Bankr. D. Del. 2005) ("Despite the similarity in the terms
'fraud' and 'fraudulent conveyance,' the pleading requirements
for fraud are not necessarily applicable to pleadings alleging a
fraudulent conveyance.") (quoting China Res. Prods. (U.S.A.) Ltd.
v. Fayda Int'l Inc., 788 F. Supp. 815, 818 (D. Del. 1992)).

Rule 8(a) of the Federal Rules of Civil Procedure requires
only that a complaint contain "a short and plain statement of the
claim showing that the pleader is entitled to relief."  Fed. R.
Civ. P. 8(a); Fed. R. Civ. P. 7008.  While a complaint "does not
need detailed factual allegations, a plaintiff's obligation to
provide the 'grounds' of his 'entitle[ment] to relief' requires
more than labels and conclusions, and a formulaic recitation of
the elements of a cause of action will not do."  Twombly, 550
U.S. at 555 (citations omitted).

In other words, "Rule 8(a)(2) requires a 'showing' rather
than a blanket assertion of an entitlement to relief . . . .
[W]ithout some factual allegation in the complaint, a claimant
cannot satisfy the requirements that he or she provide not only
'fair notice,' but also the 'grounds' on which the claims rests."
Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008)
(citing Twombly, 550 U.S. at 556).

In this case, the Court finds that the Trustee's
constructive fraudulent transfer claims in Counts Two, Four, Six,
Eight, Ten, Twelve, Fourteen, Sixteen, Eighteen, Twenty, and
Twenty-Two were sufficiently pled.  First, the Trustee has
alleged that for each transfer or forgiveness of debt, the Debtor
received nothing, which is less than reasonably equivalent value.
The Trustee has also alleged that the Debtor was insolvent as a
result of the thousands of pending claims against it.  Thus, the
Court will deny the Motions to Dismiss those Counts on the
grounds they were insufficiently pled.

        b.   <u>Breach of Fiduciary Duty</u>

The Trustee also asserts that Kelly and Spriggs breached
their fiduciary duties to the Debtor.  The Defendants claim that
these counts are not sufficiently pled under Rule 8.

A Delaware corporation owes its corporation and shareholders
three duties: the duty of care, the duty of loyalty, and the duty
to act in good faith.  A claim for breach of the duty of care
requires a showing of gross negligence and that showing generally
"requires directors and officers to fail to inform themselves
fully and in a deliberate manner."  <u>Fedders</u>, 405 B.R. at 539;
<u>Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.</u>, 906 A.2d 168,
194 (Del. Ch. 2006), <u>aff'd</u>, 931 A.2d 438 (Del. 2007) (breach of
duty of care may be sufficiently stated by alleging board
approved an acquisition without conducting due diligence,

retaining advisors, and after holding only a single meeting with

a cursory presentation).

> The duty of loyalty "mandates that the best interest of
> the corporation and its shareholders takes precedence
> over any interest possessed by a director, officer or
> controlling shareholder and not shared by the
> stockholders generally." Cede & Co. v. Technicolor,
> Inc., 634 A.2d 345, 361 (Del. 1993). "To state a
> legally sufficient claim for breach of the duty of
> loyalty, plaintiffs must allege facts showing that a
> self-interested transaction occurred, and that the
> transaction was unfair to the plaintiffs." Joyce v.
> Cuccia, Civ. A. No. 14953, 1997 WL 257448, *5 (Del.
> Ch., May 14, 1997).

Fedders, 405 B.R. at 540.

A claim for breach of the duty of good faith may be

established in several ways.

> A failure to act in good faith may be shown, for
> instance, where the fiduciary intentionally acts with a
> purpose other than that of advancing the best interests
> of the corporation, where the fiduciary acts with the
> intent to violate applicable positive law, or where the
> fiduciary intentionally fails to act in the face of a
> known duty to act, demonstrating a conscious disregard
> for his duties.

In re Walt Disney Co. Derivative Litig., 906 A.2d 27, 67 (Del.

2006) (quoting lower court decision which "echo[ed]

pronouncements our courts have made throughout the decades.").

The Court finds that the Trustee's claims for breach of

fiduciary duty are sufficiently pled in this case.  During the

period of time they were on the Debtor's board, Spriggs and Kelly

owed duties of care, loyalty, and good faith.  The Trustee

alleges that during this time, Spriggs and Kelly engaged in self-

interested transactions, namely directing the Debtor to transfer funds to them and their related entities for no legitimate business reason and with no expectation that they would be repaid.  Taking these allegations as true, the Court finds that the Trustee has alleged enough facts to state claims for breach of fiduciary duty.  Thus, the Court will deny the Motions to Dismiss Counts Twenty-Three and Twenty-Four on the grounds they were insufficiently pled.

  B. <u>Statute of Limitations</u>

  The Defendants assert that many of the claims in the Complaint must be dismissed because they are barred by the applicable statute of limitations.  Defendants may raise the statute of limitations defense in a motion to dismiss where "the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994) (citation omitted).  <u>See also</u> <u>Indus. Enter. of Am., Inc. v. Mazzuto (In re Pitt Penn Holding Co.)</u>, 484 B.R. 25, 43-44 (Bankr. D. Del. 2012) (citations omitted).  To the extent any transfer falls outside the applicable statute of limitations period, it will be subject to dismissal under Rule 12(b)(6).

1.  <u>Fraudulent Transfer Claims</u>

Section 108 of the Bankruptcy Code allows a trustee to bring a cause of action that was extant as of the petition date within two years of the filing of the bankruptcy.  11 U.S.C. § 108(a)(2).  The Trustee filed his Complaint on June 4, 2014, within two years of the Petition Date of July 12, 2012.

The Bankruptcy Code provides a further restriction, however, permitting a trustee to avoid only those fraudulent transfers "made or incurred on or within 2 years before the date of the filing of the petition."  11 U.S.C. § 548(a)(1).  A trustee may also avoid transfers which are avoidable "under applicable law by a creditor holding an unsecured claim."  11 U.S.C. § 544(b)(1).  In this case, the "applicable law" relied upon by the Trustee is Delaware's UFTA.  Del. Code Ann. tit. 6, §§ 1304-1309.

Section 1309 of Delaware's UFTA provides the statute of limitations for actual and constructive fraudulent transfer claims as follows:

> A cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought:
> (1) Under § 1304(a)(1) of this title, within 4 years after the transfer was made or the obligation was incurred or, if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant;
> (2) Under § 1304(a)(2) or § 1305(a) of this title, within 4 years after the transfer was made or the obligation was incurred. . . .

<u>Id.</u> at § 1309.

17

Section 1304(a)(1) provides a cause of action for actual fraudulent transfers, which are transfers "made . . . [w]ith actual intent to hinder, delay or defraud any creditor of the debtor." Id. at § 1304(a)(1). Section 1304(a)(2) provides a cause of action for a constructively fraudulent transfer which the debtor makes "[w]ithout receiving a reasonably equivalent value in exchange for the transfer" while the debtor "[w]as engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small" or "[i]ntended to incur, believed or reasonably should have believed the debtor would incur, debts beyond the debtor's ability to pay as they became due." Id. at § 1304(a)(2). Section 1305(a) provides a cause of action for a constructively fraudulent transfer if the debtor did not "receive reasonably equivalent value in exchange for the transfer" and "the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer." Id. at § 1305(a).

a.  Constructively fraudulent transfers

Therefore, under section 1309(2) there is a strict four-year statute of limitations for constructively fraudulent transfers. The following causes of action asserted as constructively fraudulent by the Trustee occurred after July 12, 2008 (four years before the Petition Date) and therefore are not barred by the statute of limitations:  Counts Two, Four, Six, Ten, and

18

Eighteen.  They will not be dismissed.

However, the following causes of action asserted as constructively fraudulent by the Trustee occurred before July 12, 2008 (four years before the Petition Date), and therefore they are, on their face, barred by the statute of limitations: Counts Twenty and Twenty-Two.  The Court will grant the Defendants' Motion to Dismiss as to those two Counts.  See Oshiver, 38 F.3d at 1392 (affirming dismissal of claim under Rule 12(b)(6) which on its face was filed beyond the statute of limitations).

Additionally, some of the transfers sought to be avoided as constructively fraudulent in the following Counts occurred prior to July 12, 2008, and therefore are barred by the statute of limitations:  Count Eight (transfers to Kelly Capital in the amount of $12,325,000), Count Twelve (transfers to KCI in the amount of $850,000), Count Fourteen (transfers to Spriggs in the amount of $492,105.27), and Count Sixteen (transfers to NSI in the amount of approximately $49 million).  Id.  The remaining transfers sought to be avoided as constructively fraudulent in the following Counts occurred after July 12, 2008, and therefore are not barred by the statute of limitations: Count Eight (transfers to Kelly Capital in the amount of $4,467,480.86), Count Twelve (transfers to KCI in the amount of $2 million), Count Fourteen (transfers to Spriggs in the amount of $150,000), and Count Sixteen (transfers to NSI in the amount of

$21,835,843).  The Court will grant the Defendants' Motion to Dismiss in part as to those Counts.

Although the Trustee seeks authority to amend his Complaint, the constructively fraudulent counts cannot be amended to satisfy section 1309's statute of limitations requirements.  Therefore, the Court will deny the request.

b.    Actually fraudulent transfers

Under section 1309(1) there is a four-year statute of limitations for actually fraudulent transfers.  If the fraud is hidden, however, the statute of limitations is extended to one year after the fraud was or could reasonably have been discovered by the creditor.  Del. Code Ann. tit. 6, § 1309(1).

The Trustee argues that the actually fraudulent transfers could not have been reasonably discovered by a claimant before the Petition Date and, therefore, all those causes of action were extant on that date.  The Defendants argue, however, that there are no facts alleged in the Complaint specifically addressing when the fraudulent transfers could have been reasonably discovered by a claimant.

The Complaint contains facts that are suggestive of the difficulty of reasonable discovery by a creditor of any fraud committed by the Debtor or the Defendants: Spriggs and Kelly were the only shareholders and board members of the privately held Debtor.  (Cm. at ¶¶12 & 13.)  It is alleged that they secretly

20

looted the Debtor.  (Cm. at ¶¶ 29-33.)  Because the Debtor was
not a public company, its board resolutions and financial records
were not available to creditors.  Thus, from the face of the
Complaint the Court cannot conclude that the equitable tolling
provision does not apply.  Therefore, the Court concludes it
would be inappropriate to dismiss the Trustee's actually
fraudulent transfer claims at this point.  See, e.g., In re Cmty.
Bank of N. Va., 622 F.3d 275, 301-02 (3d Cir. 2001) (holding that
"because the question whether a particular party is eligible for
equitable tolling generally requires consideration of evidence
beyond the pleadings, such tolling is not generally amenable to
resolution on a Rule 12(b)(6) motion."); IT Litig. Trust v.
D'Aneillo (In re IT Grp. Inc.), Adv. No. 04-1268, 2005 WL
3050611, at *16 (D. Del. Nov. 15, 2005) (denying dismissal of
fraudulent transfer claim on statute of limitations grounds
because there was a factual issue as to when the fraud was or
could have reasonably been discovered); Charan Trading Corp. v.
Uni-Marts, LLC (In re Uni-Marts, LLC), 399 B.R. 400, 415 (Bankr.
D. Del. 2009) (refusing to dismiss fraudulent transfer claim
which did not on its face allege when the plaintiffs discovered
the fraud or reasonably should have discovered the fraud).

Therefore, the Court concludes that dismissal of the actual
fraudulent transfer claims in Counts One, Three, Five, Seven,
Nine, Eleven, Thirteen, Fifteen, Seventeen, Nineteen, Twenty-One,

and Twenty-Six would be inappropriate at this stage in the case.
The Motions to Dismiss will be denied as to those counts.

c.    Breach of fiduciary duties claims

Delaware has a three-year statute of limitations for
breach of fiduciary duty and corporate waste and mismanagement
claims.  Del. Code Ann. tit. 10, § 8106.  See also Burtch v.
Seaport Cap., LLC (In re Direct Response Media, Inc.), 466 B.R.
626, 657 (Bankr. D. Del. 2012).  Under section 8106 "the statute
of limitations begins to run, i.e., the cause of action accrues,
at the time of the alleged wrongful act, even if the plaintiff is
ignorant of the cause of action."  End of the Road Trust v. Terex
Corp. (In re Fruehauf Trailer Corp.), 250 B.R. 168, 184 (D. Del.
2000) (citations omitted).  However, "the statute of limitations
will be tolled under the doctrine of fraudulent concealment if
the plaintiff can prove: 'an affirmative act of concealment by
the defendant — an "actual artifice" that prevents a plaintiff
from gaining knowledge of the facts or some misrepresentation
that is intended to put the plaintiff off the trail of inquiry.'"
Id. at 186 (citation omitted).

Although most of the actions that are the basis of the
Trustee's claims for breach of fiduciary duty occurred before
July 12, 2009, the Court finds that the Trustee has pled
sufficient facts that if established meet the doctrine of

22

equitable tolling.[3]  The Trustee asserts that the Debtor's
directors engaged in self-dealing in violation of their fiduciary
duties.  (Cm. at ¶¶ 29-33, 249-52, 254-57 & 261-63.)  In
addition, because the Debtor was a private company, creditors
were not aware of the transactions.  (Cm. at ¶¶ 12-13.)
Therefore, the Court will deny the Defendants' Motions to Dismiss
the breach of fiduciary duty claims.


IV.  <u>CONCLUSION</u>

     For the above reasons the Court will deny the Defendants'
Motions to Dismiss for failure to adequately plead under Rules 8,
9, and 12 of the Federal Rules of Civil Procedure.  The Court
will deny the Defendants' Motions to Dismiss the actual
fraudulent transfer and the breach of fiduciary duty claims as
beyond the statute of limitations, as the Court finds that the
Trustee has adequately pled the tolling of the statute as to
them.  The Court will grant the Motions to Dismiss the
constructively fraudulent claims that are beyond the statute of
limitations as there is no legal provision for tolling those

---

     [3]  The Trustee has also argued that these causes of action
are preserved under the doctrine of adverse domination, but this
doctrine is not accepted in Delaware.  <u>See</u> <u>Eugenia VI Venture</u>
<u>Holdings, Ltd. v. Maplewood Holdings LLC (In re AMC Investors),</u>
<u>LLC</u>, 524 B.R. 62, 81 (Bankr. D. Del. 2015) ("It also appears that
Delaware courts do not recognize adverse domination — when a
corporation's board is controlled by culpable directors — as a
basis for tolling a breach of fiduciary duty action.").

claims.

An appropriate order is attached.


Dated: June 18, 2015                    BY THE COURT:


                                        Mary F. Walrath
                                        United States Bankruptcy Judge